UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
NSTAR ELECTRIC COMPANY (D/B/A EVERSOURCE ENERGY), MASSACHUSETTS ELECTRIC COMPANY and NANTUCKET ELECTRIC COMPANY (EACH D/B/A NATIONAL GRID), FITCHBURG GAS AND ELECTRIC LIGHT COMPANY (D/B/A UNITIL), :

Plaintiffs, : Civil Action No. 26-14124-MJJ

v. :

H.Q. ENERGY SERVICES (U.S.), INC., :

Defendant. :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEFENDANT H.Q. ENERGY SERVICES (U.S.) INC.'S**
**<u>REPLY IN FURTHER SUPPORT OF ITS MOTION TO DISMISS</u>**

Alisha Q. Nanda
Kurt Wm. Hemr
Rene H. DuBois
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
500 Boylston Street
Boston, Massachusetts 02116
(617) 573-4800

Julie Bédard
Jennifer Permesly
Laura Bernescu
SKADDEN, ARPS, SLATE
MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
(212) 735-3000

*Counsel for Defendant*
*H.Q. Energy Services (U.S.), Inc.*

Dated: October 22, 2026

Hydro-Québec US hereby replies to the Distributors' Opposition (Doc. No. 35) to its Motion, relying on its initial memorandum (Doc. No. 30) for all points not addressed below.

## 1. The Distributors Have Not Pled A Breach Of Contract Because They Have Not Sufficiently Pled That Force Majeure Did Not Excuse The Delivery Interruptions

**A.** The Distributors assert that Hydro-Québec US is "seeking to avoid any review of its Force Majeure declarations." (Doc. No. 35 at 17.) Not so. Their putative contract claim challenging Hydro-Québec US's invocation of Force Majeure is simply a catalog of contentions they might raise in response to Hydro-Québec US's claim for its unpaid invoices, not an independently viable claim. The Distributors' contentions can be adjudicated in Hydro-Québec US's first-filed action.

**B.** Even if the Distributors could assert their contentions as a standalone claim, they have not pled such a claim. The delivery interruptions at issue here were excused by the Reliability Curtailment clause of the Agreements' Force Majure provision (§ 10.1(a)**(iv)**) and also by that provision's clause addressing Force Majure events that were **not within Hydro-Québec US's control** (§ 10.1(a)**(i)**). Accordingly, even if the Distributors had sufficiently pled that the Reliability Curtailment clause does not apply here—and they have not—that would not be sufficient to plead that no Force Majeure event outside Hydro-Québec US's control had occurred.

**C.** The Distributors assert that Hydro-Québec US "never claimed its delivery interruptions were the result of an event outside of its control" (Doc. No. 35 at 18), but the Distributors were plainly aware of that claim all along. From the outset, Hydro-Québec US referenced the general clause and reserved all its rights to make both contentions. (*See* Doc. No. 1-9 at 2 (January 30, 2026, letter reserving all rights under §§ 10.1(a)-(b)); *see also* Doc. No. 1-22 (April 17, 2026 letter reserving all rights; interruptions "were excused … due to Force Majeure").) The Distributors' own Complaint specifically alleges that the Agreements define Force Majeure "**in relevant part to include certain events outside the claiming party's control**" as well as "Reliability

Curtailments," citing both Sections 10.1(a)(i) and (iv). (Doc. No. 1 at 13, ¶ 54 (emphasis added).) They chose to annex to their Complaint one Distributor's February 2026 letter referencing that "control" language. (Doc. No. 1-15 at 2 (contending that Hydro-Québec US failed to show Force Majeure was "not within HQUS' control").) The Agreements also require that waivers of rights be made in writing (Doc. No. 1-3 at 63, § 18) and the Distributors identify no such writing.

**D.** The Distributors assert—in a footnote—that Hydro-Québec US's initial memorandum misread the Reliability Curtailment Force Majeure clause by denying that that clause requires that a curtailment "prohibit[] or prevent[]" performance. (Doc. No. 35 at 16 n.5.) That is simply false. Rather, Hydro-Québec US pointed out that the Agreements do not limit the definition of Reliability Curtailment solely to conditions affecting "the transmission system" as the Distributors contend. (Doc. No. 30 at 17, ¶ (b).) Because the definition of Reliability Curtailment is not so limited, the Distributors' conclusory allegations of breach (Doc. No. 35 at 15-16) are insufficient.

**E.** The Distributors concede that notice is not a condition precedent to Hydro-Québec US's invocation of Force Majeure. (Doc. No. 35 at 18.) The Distributors' conclusory assertion that Hydro-Québec US's notices were not "prompt" or "sufficient" (*id.* at 18-19) fails to address Hydro-Québec US's analysis and authorities (Doc. No. 30 at 18-20.) The cases that the Opposition cites for the proposition that the notices were belated (Doc. No. 35 at 19) are inapposite: in those cases, the party invoking force majeure did not do so until ***after*** a lawsuit commenced. *GNC Holdings, LLC v. Evolve Logistics LLC*, 2026 WL 1992134, at *4 (W.D. Pa. July 10, 2026); *SPI Pharma, Inc. v. Roben Mfg. Co.*, 2023 WL 4197181, at *5 (D.N.J. June 27, 2023).

**2. The Distributors Pled No Breach Because Their Own Complaint Establishes That Hydro-Québec US Properly Disputed Both Cover Damages And Wrongful Netting**

The Opposition argues that Hydro-Québec US challenged only the "method" by which the Distributors reimbursed their claimed Cover Damages (i.e., through netting) and not the validity

of the Cover Damages themselves. (Doc. No. 35 at 20.) That is abject nonsense: the Distributors' own Complaint establishes that from day one, Hydro-Québec US disputed both the Distributors' claims for Cover Damages and their improper netting. (*E.g.,* Doc. No. 1-12 (February 11, 2026, Hydro-Québec US letter).) Accordingly, the Distributors have pled no breach here: no provision of the Agreements precludes Hydro-Québec US from disputing claims for Cover Damages, nor do they preclude reissuing an invoice for energy that the Distributors accepted but did not pay for.

**3. <u>The Distributors Have Not Pled The Damages Element Of Their Contract Claim</u>**

The Distributors assert that they have been damaged by "being denied their contractual rights to Cover Damages and netting"—even though they already compensated themselves unilaterally through netting—and, outrageously, by purportedly "being forced to litigate"—when they alone chose to sue even though they were not out of pocket a single dollar. (Doc. No. 35 at 20.) Nor are nominal damages available to them because the Agreements provide for a "SOLE AND EXCLUSIVE REMEDY" in the form of Cover Damages. (Doc. No. 1-3 at 54, § 9(d).) The Distributors' assertion that they have been "deprived" of "reliable clean-energy supply" (Doc. No. 35 at 21) is wrong but also irrelevant because they agreed that Cover Damages are a "fair and reasonable calculation" of their damages for unexcused delivery interruptions. (*Id.* at 32, § 4.3(a).)

**4. <u>The Distributors Have Not Pled A Breach Of The Implied Covenant Of Good Faith</u>**

The Distributors assert that they have stated a claim for breach of the implied covenant because Hydro-Québec US putatively took "unilateral, voluntary action" that deprived the Distributors of the benefits of the Agreements. (Doc. No. 35 at 21-22.) That contention is refuted by the Distributors' own allegations, which acknowledge that (i) the Agreements expressly permit Hydro-Québec US to interrupt energy deliveries for a Force Majeure; (ii) the delivery interruptions were due to curtailments issued by TransÉnergie, not Hydro-Québec US; and (iii) Hydro-Québec US declared Force Majeure due to those curtailments. (Doc. No. 1 at ¶¶ 13-15, 53-58, 71.) The

Distributors cannot plead a bad faith claim based on Hydro-Québec US's good-faith invocation of a contractual right, and their conclusory allegations to the contrary do not suffice. Nor can the Distributors litigate the merits of curtailments imposed on Hydro-Québec US by baselessly characterizing such curtailments as "bad faith" on the part of Hydro-Québec US.[1]

**5. <u>The Distributors' Declaratory And Injunctive Relief Claims Are Not Viable</u>**

**A.** The Distributors concede that injunctive relief is not a proper standalone claim. (Doc. No. 35 at 22 n.6.) For that reason alone, Count 3 should be dismissed.

**B.** The Distributors assert that their claims for declaratory and injunctive relief are "forward looking" (*id.* at 23), but ignore the portions of those counts that are self-evidently backward-looking and duplicative of their contract claim. The Complaint's Paragraphs 105(a) and (b) (seeking declaratory relief) and 126 and 129 (seeking injunctive relief) seek the same relief sought in Paragraphs 112 to 115 on their contract claim. The Distributors concede as much in the penultimate paragraph of their Opposition (Doc. No. 35 at 24) where they request declaratory relief that is indistinguishable from the relief they seek on their contract claim.

The cases on which the Distributors rely do not help them. In *Martorana v. Progressive Direct Insurance Co.*, 2023 WL 2465639, at *9 (D. Mass. Mar. 10, 2023), Chief Judge Casper dismissed a declaratory relief claim as duplicative of a contract claim, citing numerous cases where other sessions of this Court "routinely followed suit." *Id.* at *9. *In re MOVEit Customer Data Sec. Breach Litig.*, 2025 WL 2176590, at *34 (D. Mass. July 31, 2025), is similarly unhelpful. That case allowed a declaratory relief claim to proceed because it was premised on allegations of

[1] The Distributors' cited cases (Doc. No. 35 at 21) involve self-serving conduct not alleged here. *Kyndryl, Inc. v. Computer Scis. Corp.*, 2026 WL 2582812, at *11 (D. Mass. Sept. 1, 2026) (contract rights exercised in bad faith in order to gain competitive advantage); *Speakman v. Allmerica Fin. Life Ins.*, 367 F. Supp. 2d 122, 135, 138 (D. Mass. 2005) (company took "deliberate actions" to deprive counterparty of benefits of agreement beyond risk that agreements contemplated).

"continued inadequacy" of a defendant's software security measures sufficient to "substantiate[] a claim for declaratory judgment in a data breach case." No such allegations are made here.

**C.** The portions of the Distributors' declaratory and injunctive relief claims premised on speculative future harm fare no better.[2] The Complaint does not provide well-pleaded factual allegations to support such sweeping claims: it mischaracterizes a news article attached as an exhibit; it concedes that the Distributors are pleading hypotheses that they hope to confirm later in discovery; and it simply speculates that Hydro-Québec US may suspend its future performance. (Doc. No. 30 at 23-24.) *See Better Way Ford, LLC v. Ford Motor Co.*, 142 F.4th 67, 78 (1st Cir. 2025) ("[A] district court is not required to accept a complaint's allegation as true if the materials incorporated into the complaint refute that very assertion."). They claim that their request for injunctive relief is based on actual statements by Hydro-Québec US but cite no such statement.

**D.** The Distributors pointedly do not address the fact that the declaratory and injunctive relief they seek runs afoul of the Agreements' terms (i) specifying when performance may be suspended and (ii) defining Force Majeure. (*See* Doc. No. 30 at 24-25.)

**E.** The Distributors' contention that Massachusetts law prohibits limiting remedies for intentional acts is meritless. Their sole authority, *H1 Lincoln, Inc. v. South Washington Street, LLC*, 489 Mass. 1 (2022), held only that "limitation of liability provisions will not be enforced to protect defendants who willfully or knowingly engage in the unfair or deceptive conduct prohibited by [M.G.L. c. 93A, § 11]." *Id.* at 3. The Distributors have asserted no Chapter 93A claim here.

## CONCLUSION

For the foregoing reasons, the Distributors' Complaint should be dismissed in its entirety.

[2] In citing *TrailblazHers Run Co. v. Boston Athletic Association*, 2025 WL 871248, at *10 (D. Mass. Mar. 20, 2025) (Doc. No. 35 at 23), the Distributors appear to fault Hydro-Québec US for challenging their standalone injunctive relief claim on the basis that remedies are not claims. That notwithstanding, the allegations of future injuries in *TrailblazHers* were far more robust than anything the Distributors have put forth here.

Dated: October 22, 2026
Boston, Massachusetts

Respectfully submitted,

/s/ Alisha Q. Nanda
Alisha Q. Nanda (BBO #657266)
Kurt Wm. Hemr (BBO #638742)
Rene H. DuBois (BBO #688849)
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
500 Boylston Street
Boston, Massachusetts 02116
(617) 573-4800
alisha.nanda@skadden.com
kurt.hemr@skadden.com
rene.dubois@skadden.com

Julie Bédard (*pro hac vice)*
Jennifer Permesly (*pro hac vice)*
Laura Bernescu (*pro hac vice*)
SKADDEN, ARPS, SLATE
MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
(212) 735-3000
julie.bedard@skadden.com
jennifer.permesly@skadden.com
laura.bernescu@skadden.com

*Counsel for Defendant*
*H.Q. Energy Services (U.S.), Inc.*